**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CINDY L. SCHULER,**

                    **Plaintiff,**            **5:13-cv-144
                                                                           (GLS)**

                          v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                    **Defendant.**
_____

**APPEARANCES:**                     **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Segar, Sciortino Law Firm           GREGORY T. PHILLIPS, ESQ.
400 Meridian Centre
Suite 320
Rochester, NY 14618

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN     REBECCA H. ESTELLE
United States Attorney              Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Cindy L. Schuler challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Schuler's arguments, the Commissioner's decision is reversed and remanded.

## II. Background

On December 14, 2009, Schuler filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since December 3, 2008. (Tr.[1] at 63-69, 97-98, 206-09.) After her applications were denied, (*id.* at 101-12), Schuler requested a hearing before an Administrative Law Judge (ALJ), which was held on September 1, 2011, (*id.* at 70-96, 114-15). On November 14, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 3-8, 19-41.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 11.)

Schuler commenced the present action by filing her complaint on February 6, 2013 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 10, 11.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 16, 18.)

### III. Contentions

Schuler contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 16 at 10-21.) Specifically, Schuler claims that the ALJ erred in: (1) determining the materiality of her drug and alcohol use; (2) assessing her credibility; (3) procuring and relying on the opinion of a non-examining medical source; and (4) evaluating the opinion of her treating psychiatrist. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 18 at 5-11.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 16 at 6-10; Dkt. No. 18 at 1.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.  Materiality Of Substance Use

First, Schuler argues that the ALJ failed to apply the correct legal standard in assessing the materiality of her drug and alcohol use. (Dkt. No. 16 at 10-12.) The court disagrees.

The Act, as amended in 1996, states that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." *Mims v. Apfel*, 182 F.3d 900, 1999 WL 376840, at *1 (2d Cir. 1999) (internal quotation marks and citation omitted).

---

[2] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical. As such, parallel citations to the regulations governing SSI are omitted.

Accordingly, if the ALJ finds that the claimant is disabled utilizing the standard sequential analysis, and there is medical evidence of the claimant's drug addiction or alcoholism, the ALJ must then determine "whether [the ALJ] would still find [the claimant] disabled if [she] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(a), (b)(1). In making this determination, the ALJ must evaluate which of the claimant's limitations would remain if she stopped using drugs or alcohol, and then determine whether any or all of the remaining limitations would be disabling. *See id.* § 404.1535(b)(2).

Here, the ALJ concluded that "[t]he evidence does not indicate disabling mental impairments, particularly if [Schuler] abstains from abusing substances and takes her medications as directed." (Tr. at 32.) Although this language could suggest that the ALJ improperly segregated out the effects of Schuler's substance use disorders in the first instance, the ALJ's discussion of and reliance on the opinion of non-examining medical expert Stuart Gitlow clarifies the ALJ's rationale. (*Id.* at 34.) Dr. Gitlow opined that Schuler suffers from opioid and sedative dependence, with sedative induced anxiety, but, as a result of these impairments, experiences no more than mild functional limitations. (*Id.* 540-47.) Thus, it

5

is clear that the ALJ considered the ill effects of Schuler's substance use on her functional abilities when determining that Schuler was not disabled. Accordingly, as the Commissioner points out, (Dkt. No. 18 at 10), the ALJ was not required to reach a conclusion as to whether Schuler's alcohol and drug use are a contributing factor material to the determination of disability. *See* 20 C.F.R. § 404.1535(a). However, although it is clear that the ALJ followed the correct legal standard to be applied in analyzing Schuler's alcohol and substance abuse problems, as discussed below, it is not at all clear that Dr. Gitlow's opinion provides substantial evidence[3] for the ALJ's determination. *See infra* Part VI.B.

## B. <u>Weighing Medical Opinions</u>

Among other arguments, Schuler contends that the ALJ erred in procuring and relying on the opinion of non-examining medical expert Dr. Gitlow to determine her residual functional capacity (RFC),[4] and weighing

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

[4] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

6

the opinion of treating physician Lawrence Hurwitz. (Dkt. No. 16 at 14-21.) The court agrees that remand is required in this case.

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c).

In August 2011, Dr. Hurwitz competed a medical source statement for Schuler and opined that she was moderately restricted in her ability to understand, remember, and carry out simple instructions, and extremely restricted in her ability to interact appropriately with the public, supervisors,

7

and co-workers, and respond appropriately to usual work situations and changes in a routine work setting. (Tr. at 451-53.) Dr. Hurwitz explained that Schuler's anxiety and depression are often extreme, she has an extremely poor self image, and has attempted suicide a number of times. (*Id.*) Subsequently, Dr. Hurwitz and social worker Joseph Ridgway co-signed an opinion indicating that Schuler's "severe anxiety" requires anti-anxiety medication be taken six times a day, and that the severity of Schuler's bipolar disorder and anxiety precludes her from working, because she cannot interact appropriately with others and has significant problems in concentration and focus. (*Id.* at 500-01.) The ALJ gave these opinions little weight because "it [was] apparent that [Dr. Hurwitz was] not aware of [Schuler's] addiction problems," and his opinions "appear[ed] to be based on [Schuler's] self reports." (*Id.* at 33-35.)

In September 2011, Dr. Gitlow reviewed the medical evidence of record and opined that "this is a straightforward case of addictive disease." (*Id.* at 541-45.)[5] According to Dr. Gitlow, Dr. Hurwitz did not appear to be

---

[5] Schuler argues that the ALJ erred in obtaining the opinion of Dr. Gitlow, "without first attempting to secure any information from [her] treating source." (Dkt. No. 16 at 15.) However, the regulation that Schuler relies on is inapplicable here, as it pertains to the procurement of additional examinations or tests by the Commissioner. (*Id.*); *see* 20 C.F.R. § 404.1519h. Dr. Gitlow did not provide either examination or test results, but, rather, offered his opinion on the nature and severity of Schuler's impairments. *See* 20 C.F.R. § 404.1527(e)(2)(iii) ("[ALJs] may

8

aware of Schuler's history of addictive disease or recognize that the "rapidly increasing dosage of sedatives [that he prescribed] were both causing worsening anxiety and would eventually cause . . . rapid decompensation." (*Id.* at 541.) Dr. Gitlow opined that Schuler suffered such a decompensation and hospital admission in March 2011, and, assuming that this decompensation continued, it was "entirely due to the continued prescription of sedative agents and would be expected to last less than a year if those sedatives were to be tapered off and [Schuler] were to receive appropriate treatment for her longstanding addictive issues." (*Id.*) Additionally, Dr. Gitlow explained that, "[w]ith the higher doses [of sedatives] prescribed more recently, [Schuler's] impairment has worsened," but because the treatment notes of record do not describe such worsening, his opinion of her functional limitations reflects the mild impairment described in consultative examiner Denis Noia's February 2010 report.[6] (*Id.* at 542.) Thus, based on Dr. Gitlow's analysis, his opinion

---

also ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment.").

[6] Upon examination, Dr. Noia observed that Schuler was cooperative, with adequate social skills, and appropriate eye contact. (Tr. at 406-10.) Schuler's thought processes were coherent and goal directed and her attention and concentration intact, but her memory was mildly impaired, mood depressed, and affect constricted. (*Id.* at 408.) Schuler reported that she can care for her personal hygiene, cook, and perform general cleaning, but that she

9

cannot constitute substantial evidence for the ALJ's RFC determination because it is based on a stale examination. *See Acevedo v. Astrue*, No. 11 Civ. 8853, 2012 WL 4377323, at *16 (S.D.N.Y. Sept. 4, 2012) (noting that courts have found a lack of substantial evidence where an ALJ relies on an RFC assessment that was completed before a full medical history was developed); *Pierce v. Astrue*, No. 09-CV-813, 2010 WL 6184871, at *5-6 (N.D.N.Y. July 26, 2010) (holding that the ALJ erred in relying on a treating source's opinion, where it was rendered nearly three years prior to the ALJ's decision, and, in the meantime, the evidence indicated that the claimant's condition may have worsened). Given Dr. Gitlow's conclusion that "there is no description of [Schuler's more recent] worsening within any progress or treatment notes," a new, updated mental status examination should have been obtained in this case. (Tr. at 542); *see Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel.'"

---

cannot shop due to anxiety, and cannot manage money due to difficulties concentrating. (*Id.* at 409.) Based on this exam, Dr. Noia opined that Schuler appears capable of understanding and following simple directions, maintaining attention and concentration, attending to a routine and maintaining a schedule, making appropriate decisions, and relating to and interacting moderately well with others. (*Id.*) Dr. Noia further concluded that Schuler "appears to be having some difficulty dealing with stress." (*Id.*)

10

(quoting *Perez*, 77 F.3d at 47)).

Moreover, substantial evidence does not support Dr. Gitlow's opinion that Schuler's impairments cause no more than mild limitations. (Tr. at 543-44.) Rather, the evidence indicates that Schuler attempted suicide by drinking two liters of mouthwash in June 2009, and overdosed on her prescription medications in July 2010 and March 2011.[7] (*Id.* at 293-95, 466-70, 483-84.) Throughout the record, Schuler was assigned Global Assessment of Functioning (GAF) scores between twenty and fifty-five, indicating anywhere from a total inability to function, to moderate difficulties in functioning.[8] (*Id.* at 285, 294, 305, 308, 331, 462, 473, 482, 494, 497.)

---

[7] The court notes that the July 2010 overdose was in the context of alcohol usage. (Tr. at 483, 495.) Although there is one reference to the influence of alcohol in the March 2011 treatment notes, this appears to be a recount of Schuler's July 2010 overdose, as the remainder of the March 2011 treatment records indicate that her alcohol dependence was in remission at this time. (*Compare id.* at 471-72, *with id.* at 495-96; *see also id.* at 466, 470, 476, 481-82.) Consistent with her duty to develop the record, the ALJ should clarify this matter on remand, if necessary to make her determination.

[8] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004). "A GAF score of twenty-one to thirty indicates that '[b]ehavior is considerably influenced by delusions or hallucinations [or] serious impairment in communication or judgment . . . [or] inability to function in almost all areas.'" *Whipple v. Astrue*, 2011 WL 1299352, at *2 n.6 (N.D.N.Y. Mar. 8, 2011) (quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000)). A score between thirty-one and forty indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) [or] major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is *unable to work*)." *Prabhakar v. Life Ins. Co. of N. Am.*, No. 09-CV-05530, 2013 WL 4458728, at *4 n.11 (E.D.N.Y. Aug.16, 2013) (internal quotation marks and citation omitted). A score between fifty-one and sixty indicates moderate symptoms or moderate difficulty in school, work, and social functioning. *See Kohler*, 546 F.3d 260, 262 n.1 (2d Cir. 2008).

Because the ALJ's RFC determination was so heavily based upon Dr. Gitlow's assessment, it is flawed. (*Id.* at 34-35.)

After receiving Dr. Gitlow's assessment, Schuler's counsel requested twenty days to respond. (*Id.* at 265.) Thereafter, Schuler submitted a response to Dr. Gitlow's assessment from Dr. Hurwitz, dated November 1, 2011. (*Id.* at 268-70.) However, the record before the court does not reflect that the ALJ formally acted on Schuler's request to hold open the record, and she did not consider Dr. Hurwitz's November 2011 letter in her decision. In the November 2011 letter, Dr. Hurwitz opined that Schuler suffers from a "distinct mental impairment separate and apart from any other diagnostic consideration," specifically, bipolar disorder and extreme anxiety. (*Id.* at 269.) He further noted that Schuler has not misused her prescription medication on a consistent basis, and that her attempts to kill herself by overdose on medication were "desperate acts by a severely depressed woman," but that the medications are not an "end in themselves." (*Id.* at 269-70.) According to Dr. Hurwitz, Schuler has not abused alcohol for the past seven years, but is unable to cope with the stress and pressure she would incur in the work environment due to her severe anxiety and bipolar disorder. (*Id.* at 270.) Although this letter was

12

contained in the record before the Appeals Council, their decision makes no specific references to Schuler's case or the additional evidence from Dr. Hurwitz. (*Id.* at 3-8); *see James v. Comm'r of Soc. Sec.*, No. 06-CV-6180, 2009 WL 2496485, at *10 (E.D.N.Y. Aug. 14, 2009) (holding that "where newly submitted evidence consists of findings made by a claimant's treating physician, the treating physician rule applies, and the Appeals Council must give good reasons for the weight accorded to a treating source's medical opinion"). Thus, on remand, Dr. Hurwitz's November 2011 opinion should be evaluated.

C. **Remaining Findings and Conclusions**

Because Schuler's remaining contentions may be impacted by the subsequent proceedings directed by this Order, it would be improper for the court to consider them at this juncture.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 22, 2014
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court